## M. D. Wells & Co. v. T. B. Yarbrough.

### No. 7527.

1. **Guaranty.** — This suit not being brought upon a guaranty, questions on such a contract will not be revised on appeal.

2. **Findings of Fact, etc., by Court.**—Conclusions of law and of fact should be kept distinct, but the failure to do so can not as a general rule be treated as ground for reversal of the judgment.

3. **Same.**—An objection to the finding of facts that they are against the preponderance of the evidence is immaterial. The question on appeal is whether there is evidence to support the finding, not as to preponderance. See facts.

Appeal from Fannin. Tried below before Hon. E. D. McClellan. No statement is necessary.

*Evans & Evans* and *Brown & Bliss*, for appellants.—1. Where goods are supplied to a third person at the instance of the person claimed to be a guarantor, and the credit is given to the person at whose instance the goods were supplied and he is treated as the real debtor, then the promise is direct, and the case is not within the statute of frauds. Wood on Stat. of Frauds, sec. 128.

2. When a party having notice at the time that goods are being supplied to a third person on such party's credit, and that the goods have been charged to him by the seller in good faith, yet makes no objection or disclaimer of liability until more than four months afterward when the third person has become insolvent and has no property subject to execution, such party is estopped from denying liability to the seller for the value of the goods, especially after having received some of the benefits of the transaction. 2 Herm. on Estop., secs, 782, 938; Winter v. Hart, 39 Conn., 16.

No brief for appellee reached the Reporter.

HENRY, ASSOCIATE JUSTICE.—On January 11, 1889, M. D. Wells & Co. filed suit against T. B. Yarbrough for $668.04, for goods sold and delivered to him about July 10, 1886.

By amendment filed September 29, 1889, plaintiffs set up, that about July 10, 1886, at defendant's special instance and request they had sold and delivered to him goods, wares, and merchandise described in an exhibit attached to their petition at the prices named in said exhibit, aggregating $603.04 of which sum defendant was to pay to plaintiff $20.24 thirty days after the sale, and the balance four months after September 15, 1886. This count closed with the usual allegations of default on the part of defendant, etc., and prayer for relief.

By another count in said amended petition, plaintiffs alleged, in substance, that during the year 1886, and for a long time prior thereto, the defendant had been wholesaling or jobbing in a small way as well as retailing goods as a merchant in Honey Grove, Texas, and plaintiffs had been furnishing him with boots and shoes, not only for his retail trade but for his wholesale trade as well; that among those to whom the defendant had wholesaled in a small way, and for whom plaintiffs had supplied to defendant boots and shoes, were Pickens & Thomas, at Gober, Texas, and H. C. Rumbley, at Cooper, Texas; that during a visit of plaintiffs' salesman to defendant's place of business during July, 1886, defendant expressing a doubt as to the quantity of goods that would be needed by Pickens & Thomas and Rumbley, said salesman proposed that he would himself see said parties for the defendant, take their orders, and ship the goods direct to them, so charging the goods to defendant and pricing them to said parties as to enable defendant to make his usual profit, to which proposition defendant as-

sented; that in pursuance of this agreement plaintiffs' salesman Bradley visited said parties, took their orders, duplicated them, sent one set to plaintiffs, with a letter fully explaining the matter, and sent the other set to defendant; that plaintiffs duly forwarded the goods direct to Pickens & Thomas and Rumbley, and at the same time made out duplicate invoices (except prices), sending one set to Pickens & Thomas and Rumbley, respectively, and one set to Yarbrough, the defendant; that the difference in prices between the sets sent to Yarbrough and those sent to Pickens & Thomas and Rumbley covered the usual profit made by defendant in wholesaling goods to those parties; that the invoices sent to Yarbrough showed that the goods were charged to him, and with the exception of an item of $20.24 in the Rumbley bill would be due from him four months after September 15, 1885; the small item of $20.24 was to be due in thirty days; that the invoices sent to Pickens & Thomas and Rumbley showed that the goods were to be paid for by them, with the exceptions of two small items, four months after September 1, 1886; that plaintiffs charged defendant on their books for the goods at the prices named in the invoices sent to him, and made no charge whatever against Pickens & Thomas and H. C. Rumbley; that the goods shipped to Pickens & Thomas had been duly paid for, but default had been made as to the Rumbley bill, aggregating $668.04; and prayed for judgment, etc.

Plaintiffs further charged, that defendant well knew that the goods shipped to Rumbley had been charged to him, and that plaintiffs were relying entirely upon him for payment, yet he never repudiated liability until long after Rumbley had failed in business and become insolvent, wherefore defendant was estopped, etc.

Plaintiffs averred, that they "never extended any credit to the said H. C. Rumbley in said transactions, but relied entirely on said Yarbrough, and that in the sale of said goods to the said parties their said salesman acted as the defendant's agent."

Defendant answered by a general exception, general denial, and specially, that plaintiffs had sold the goods to Rumbley on four months time from September 1, 1886, and pleaded the statute of limitation of two years.

By another special answer defendant alleged, that he had proposed during the visit of plaintiffs' salesman Bradley, in July, 1886, to guarantee the collection of the bills sold to Pickens & Thomas and Rumbley for 10 per cent of the amount if due diligence was used to collect, and that Bradley had not notified defendant whether the proposition was accepted or not, nor of the amount of the bills, nor when the bills would become due; that plaintiffs had used no diligence to collect the Rumbley bill, which could have been collected by due diligence; that the proposition so made by defendant to guarantee the collection of said bills was made verbally; and the statute of frauds was pleaded.

The cause was tried without a jury, and the judge filed conclusions of fact, as follows:

1.    That the goods were sold to Rumbley and not to the defendant.

2.    That before the goods were sold to Rumbley the defendant verbally agreed to guarantee the payment of the price for which they were sold in consideration of his being paid by plaintiffs 10 per cent on the amount of the sale.

3.    That the debt matured on the 1st day of January, 1887, and this suit was begun on the 11th day of January, 1889.

4.    That the letters of the defendant and other papers adduced in evidence do not constitute such a memorandum in writing as will take the agreement out of the statute of frauds.

The court filed conclusions of law, as follows:

1.    If the pleadings of the plaintiffs will support a recovery against the defendant as guarantor, still the agreement can not be enforced, because it was within the statute of frauds.

2.    If the letters and papers in evidence were a sufficient memorandum to take the agreement out of the statute of frauds, they are not sufficient to make a contract in writing within the meaning of the statute of limitation, and plaintiffs' cause of action would be barred by the statute of limitation of two years.

The pleadings of the plaintiffs do not seek to recover of the defendant as a guarantor, but as the principal and sole debtor, and hence we are not called upon to consider assignments of error relating to the former phase of the case—though we may say that we have not found in the record what we would consider reversible error if we were called upon to consider it in that aspect.

The plaintiffs excepted to the findings of fact, on the ground that they were contrary to the preponderance of the evidence, and by their assignments of error they contend that the finding that the goods were sold to Rumbley and not to the defendant was contrary to the preponderance of the evidence.

In this connection the appellants complain of the findings, on the ground that the conclusions of law were not separated from the conclusions of fact, contending that the fourth conclusion of fact is in reality a conclusion of law.

Such conclusions should be kept distinct, but the failure to do so can not as a general thing be treated as a ground for reversing the judgment. While we think that the fourth finding should have been treated as a conclusion of law and not of fact, there is about it nothing confusing or misleading. It is clearly stated, and its place in the record was no doubt the result of a harmless inadvertence upon the part of the trial judge.

An exception to the findings of fact on the ground merely that they are against the preponderance of the evidence can not be treated by us

as of importance. We treat such findings like we do the verdict of a jury, and the question with us is not whether they are supported by a preponderance of the evidence, but it is whether or not there is any evidence to support them. Where there is none, they, like verdicts of a jury under similar circumstances, will be disregarded. In this case the evidence on the issue was conflicting, but there was evidence properly admitted, and, if believed, sufficient to sustain the conclusions, and they, being so supported, must stand.

Under the plaintiffs' pleadings, this issue being found against them, no judgment in their favor could have been properly rendered, and errors in the further proceedings, if they had occurred, should be treated as immaterial.

We do not think that either the pleadings or the evidence warranted a finding in favor of the plaintiffs on the ground of estoppel.

We find no error in the proceedings for which we think the judgment should be reversed, and it is affirmed.

*Affirmed.*

Delivered May 20, 1892.